William T. Collins, S.
The petitioner in this proceeding for construction of the will is the trustee of a trust created under its eighth clause and of a second trust which was established by the decree of this court giving effect to an agreement of the parties compromising objections interposed in an earlier accounting. He seeks definition of directions contained in paragraph Tenth of the will dealing with the disposition of 1 ‘ stock * * * [and] * ° * extraordinary cash dividends.” Fiduciary action in these matters in connection with the “ settlement trust ” is governed by the same standards as control the testamentary trust for the decree to which reference has been made incorporated the provisions of the will as the charter of the authority conferred upon the trustee. (Matter of Bausch, 270 App. Div. 418.)
The testatrix executed her will on March 8, 1929 and died on May 30 of the same year. She left her residuary estate, in trust for her daughter, Dorothy Hogan Be Bemer, for life, and directed that 40% of the annual income be paid to Mrs. Be Bemer with the balance in varying proportions to other individuals who were to share the remainder with the issue of the principal legatee. Paragraph Tenth of the will, which has given rise to the question here involved, is reprinted below to the extent required for an understanding of the issue in dispute.
‘ ‘ I direct that any and all stock dividends, or extraordinary cash dividends, which may be declared, in whole or in part, from corporate earnings actually accumulated prior to my decease, or prior to the purchase of the stock on which any such dividend may he declared, shall he treated entirely as income and shall be paid * ® * to my daughter bobothy hogax de bemer, regardless of encroachment upon principal.
‘ ‘ I further direct that no such dividend is to be taken into account in computing the aggregate amount of income upon which the foregoing percentages are to be based; it being my intention that my said daughter shall receive absolutely as her own property any such dividend that may be declared upon any security in which any portion of the trust last above created may at any time be invested,”
During the course of his administration of the trust estates, the trustee has acquired securities as a result of distributions made by corporations in whose stock either he or the testatrix *452 had previously invested. In some instances such distributions clearly took the form of stock dividends but others represented the results of split-ups, recapitalizations and like operations of corporate ownership and control. Sharp division concerning the extent to which the instructions just cited operate against such acquisitions has brought the question here on a record consisting of a stipulation of facts reciting the essential details in connection with each of the distributions involved.
The trustee takes the position that any and all stock dividends received by him are allocable to the account of Mrs. De Berner whether or not attributable to earnings accumulated prior to the death of the testatrix or to the purchase of the stock on which they are declared. The special guardian for infants contingently interested in principal and income of both trusts insists that the will is not susceptible of an interpretation which would produce this result and argues that Mrs. De Berner is entitled only to such dividends as can be shown to represent earnings which were available for distribution prior to the stock purchase or to her mother’s death. He is joined in this conclusion by other adult remaindermen who, in addition, urge the imposition of a surcharge against the trustee for allocations heretofore made and press for his removal.
The will, executed subsequent to May 17, 1926, is subject to the operation of section 17-a of the Personal Property Law which provides: “§ 17-a. Stock dividends. Unless otherwise provided in a will, deed or other instrument, which shall hereafter be executed and shall create or declare a trust, any dividend which shall be payable in the stock of the corporation or association declaring or authorizing such dividend and which shall be declared or authorized hereafter in respect of any stock of such corporation composing, in whole or in part, the principal of such trust, shall be principal and not income of such trust. The addition of any such stock dividend to the principal of such trust, as above provided, shall not be deemed an accumulation of income within the meaning of this article. ’ ’
To free the will from the application of the statutory direction for distribution of stock dividends it must appear that the testatrix availed herself of the choice permitted under section 17-a to invoke the use of a different formula (Matter of Lloyd, 292 N. Y. 280; Equitable Trust Co. v. Prentice, 250 N. Y. 1). Paragraph Tenth manifests an election on her part to do so within the carefully defined limits which her instructions impose. It is to be noted, however, that that text of the will is confined to the treatment of “ all stock dividends, or *453 extraordinary cash dividends, which may be declared in whole or in part, from corporate earnings actually accumulated prior to my decease or prior to the purchase of the stock of which any such dividend may be declared ’ Her silence concerning stock dividends from earnings accumulated after her death or after the purchase of the stocks involved must be read as an expression of her willingness to let the statutory formula apply in such cases with the result that dividends from such sources must be allocated to principal.
In arguing for a different result, Mrs. De Berner and the trustee rely upon the Tenth paragraph of the will as an expression of an intention relating to all stock dividends received in the course of the administration of the trust estate. They point to broader aspects of the testamentary program as evidence of the testatrix’ purpose to benefit her daughter in preference to other beneficiaries. This general pattern does emerge but not in the particular with which we are presently dealing. Nor does the argument find support from the fact that in paragraph Tenth the testatrix stated that she was not concerned with “ any encroachment upon principal ” for to give this phrase the meaning Mrs. De Berner attributes to it would require its total removal from its context. As has already been observed, the instructions contained in paragraph Tenth are specifically confined in their application to dividends declared “ from corporate earnings actually accumulated prior to (my) decease or prior to the purchase of the stock ”. There is nothing to be found in these precise and carefully drawn directions to suggest that the testatrix had any broader purpose in mind. Finally, the court is unable to concur in the conclusion that the adoption of the described construction would produce absurd results but if that were in fact true', the responsibility rests with the testatrix beyond correction through post-mortem alteration (Matter of Durand, 250 N. Y. 45; Manion v. Peoples Bank. 292 N. Y. 317, 321).
The stipulation of facts includes an agreement of trust executed by the testatrix as settlor on March 27, 1923 with amendments bearing later dates. They are offered in evidence by the trustee in support of his position that all stock dividends are payable to Mrs. De Berner and are said to manifest an intention upon the part of the settlor to treat her adopted daughter, Camilla, the beneficiary of the inter vivos trust in the same manner in which the petitioner contends the will deals with the principal beneficiary of the testamentary trust. There is no such ambiguity in the will as would permit the introduction of *454 these documents in evidence in explanation of its purpose and the objection to their receipt is accordingly sustained (Dwight v. Fancher, 245 N. Y. 71, 74).
Having reached the conclusion that the testatrix limited the operation of section 17-a of the Personal Property Law upon the will only to the extent indicated, there remain for decision the questions presented by the petition in connection with the acquisition of each of the securities enumerated. Broadly, this may be said to involve a determination of what the testatrix meant in her use of the words “ all stock dividends, or extraordinary dividends, which may be declared, in whole or in part, from corporate earnings actually accumulated prior to my decease, or prior to the purchase of the stock on which any such dividend may be declared ’ ’. The parties are in agreement that this direction would not encompass securities received by the trustee as the result of a stock split or recapitalization without an increase in the total par value of the shares held in the trust and without a transfer from surplus to capital account of the issuing corporation. ‘ ‘ A stock split-up is a dividing up of outstanding shares into a greater number of share units. It merely reduces the per share value (the par value in the case of par value shares or the stated value in the case of no par value shares) of each outstanding share and increases the total number of shares issued. It involves no change in the legal or stated capital of a corporation and results in receipt of no extra value by stockholders.” (1953 Federal Tax 'Service, O. C. H., par. 8530 B.)
In an argument carefully confined to an assumption without a concession that the special guardian and other respondents are correct in their interpretation of the will, the trustee urges that securities received by him in the form of dividends based on transfers by the issuing corporations to capital stock accounts from capital surplus, as distinguished from earned surplus, are allocable to the account of Mrs. De Bemer. In each instance the dividend was declared from a surplus which was available for distribution prior to the acquisition of the stock by the testatrix or the trustee but in no case did it represent “ earnings accumulated prior to (my) decease or prior to the purchase ”. It is permissible corporate practice in this and other States to distribute capital surplus in such a manner and the distribution may take the form of a stock dividend. (Randall v. Bailey, 288 N. Y. 280; Matter of Lloyd, 292 N. Y. 280, supra; Matter of Whitacre, 208 Minn. 286.) However, dividends derived from such sources are uniformly held to constitute a return of capital and hence to be allocable to principal in *455 accordance with well-settled rules of trust accounting (3 Page, Wills [3d ed.], pp. 457-458 ; 2 Scott, Trusts, § 236.14). No departure from this rule is permissible under the present will because the dividends clearly do not represent accumulated earnings (Matter of Lissberger, 189 Misc. 277, affd. 273 App. Div. 881, motion for leave to appeal denied 298 N. Y. 934; Matter of Strong, 198 Misc. 7, affd. 277 App. Div. 1157). As a consequence all securities received by the trustee as dividends declared from capital surplus as distinguished from earned surplus accounts are held to be additions to corpus and not income payable to Mrs. De Berner. Matter of Lloyd (292 N. Y. 280, supra) relied upon by the trustee is clearly not in point, for in that case the will directed the allocation of “ all dividends ” to income.
The petition shows the receipt of stock dividends on 200 shares of Manufacturers Trust Company stock which had been purchased by the trustee during the year 1936. The parties have agreed that the correspondence annexed to the stipulation as an exhibit setting forth the circumstances surrounding the issuance of the dividend is to constitute the record for the determination of its allocation. The source of the dividend is shown to have been a realized increment on properties taken over by the company in settlement of defaulted loans outstanding. At the time of their acquisition which was prior to 1936, the assets had a value of less than the amounts due on the loans which they secured and, consequently, on each settlement the company sustained a loss measured by the difference in value between the unpaid principal and the underlying security. The losses were reflected on the books of the company in each instance by charging off the balance of the indebtedness as a bad debt. After 1936 the assets increased in value and the proceeds of their subsequent sale were capitalized and formed the fund from which the stock dividends in question were declared.
The special guardian states the problem in connection with this dividend in the following terms: ‘ ‘ whether such increments in value, realized on the subsequent sale of the assets, are to be regarded as profits realized in the year of such sale, or as profits accumulated in a prior year. ’ ’ In doing so he falls into the error with which he has charged the petitioner for he ignores the direction of the testatrix that dividends declared in whole “or in part from corporate earnings actually accumulated prior * * * to the purchase of the stock ’ ’ shall be allocable to the account of Mrs. De Berner. The acquisition of the asset by the company, which took place prior to the purchase of the stock, its retention and its subsequent sale must be *456 regarded as the constituents of a continuing transaction and to that extent it can be said that the earnings were 1 ‘ in part ’ ’ accumulated within the time fixed by the testatrix. The operation was described by an official of the Manufacturers Trust Company in a letter which has been incorporated in the stipulation of facts. He stated:
“ You ask: ‘ Can it be said that the two stock dividends were declared in part from corporate earnings actually accumulated prior to December 22, 1936? ’
1 ‘ I feel that one could fairly say that both the stock dividends referred to were, in substantial part, capitalizations of earnings accumulated prior to December 22nd, 1936. My reason is that the fund which was capitalized in order to pay these dividends consisted principally of recoveries of charge-offs and reclamations of excess reserves. Many of the charge-offs recovered had been made prior to 1936 and, when made, had penalized the then existent accumulated earnings and profits. The associated recoveries, in consequence, would seem to represent, from an accounting viewpoint, restorations of the accumulated earnings and profits that had existed at the time of the respective charge-offs.”
The court holds that the dividend in question was properly assigned to Mrs. De Eemer.
The trustee is the holder of 100 shares of the common stock of the Cincinnati Cas & Electric Company. That company amended its articles of incorporation to increase the par value of the stock from $8.50 to $17, transferring sufficient moneys for the purpose from premium on capital stock account to its common capital stock account. Because this was done without the declaration or issuance of a stock dividend the parties are in agreement that the increment in the value of the stock held in the trust belongs to principal (People ex rel. Adams Elec. Co. v. Graves, 272 N. Y. 77). They also concede that a stock dividend received on stock which was purchased subsequent to the declaration of the dividend is allocable to principal and hence are in accord that 20 shares of American Can Company common received by the trustee under such circumstances are distributable to corpus.
Before dealing separately with the securities enumerated in the petition in accordance with the rulings heretofore made, the court must again emphasize the fact that the results here reached are the products of the testatrix’ own choice. Charged with knowledge of the effect of the then comparatively recently enacted section 17-a of the Personal Property Law, she deliberately forestalled its consequences in a very limited field but *457 failed to take any action in what might appear to some to be a more logical operating area. She was free to allocate all stock dividends to the principal income beneficiary but she did not do so and instead confined her direction to dividends representing earnings which antedated the acquisition of the stock. Her purpose was plainly stated and the court is powerless to upset her program on the supposition that a wiser choice was available. (Matter of Tamargo, 220 N. Y. 225.)
The prayer of the adult respondents for removal of the petitioner is in all respects denied for there has been no showing of the existence of facts which would justify the granting of such relief (Surrogate’s Ct. Act, § 99 et seq.). The application for surcharge is also denied; it would be inequitable to impose any penalty without having the entire record of the administration of the trusts before the court on an application for a settlement of the account which is not sought in this proceeding.
The court holds that the securities listed in the following subparagraphs of paragraph 118 of the petition are allocable to principal in accordance with the rulings hereinbefore made and for the reasons stated: (b), (e), (f), (g), (h), (i), (j), (k), (1), (n), (o), (p), (q), (r), (s), (u), (v), (w); the securities listed in the following subparagraphs of paragraph 118 of the petition are allocable to the account of Dorothy Hogan De Berner: (c), (d), (m), (t), (x); the securities listed under subparagraph (a) of the petition are allocable to all of the income beneficiaries in the proportions set forth in paragraph Eighth of the will.
Submit decree on notice construing the will in accordance with the foregoing and directing distribution in the manner outlined.